T.C. Memo. 2013-210

UNITED STATES TAX COURT

GEOFFREY S. DICKES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15107-12L.                    Filed September 9, 2013.

Geoffrey S. Dickes, pro se.

<u>Anne M. Craig</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Pursuant to sections 6320(c) and 6330(d)(1),[1] petitioner

seeks review of respondent's determination to proceed with the collection by lien

or levy of petitioner's 2007-09 tax liabilities.

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

**[\*2]** The issues for decision are: (1) whether petitioner is liable for the following additions to tax:

| | Additions to tax | | |
|---|---|---|---|
| Year | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2007 | $1,837.80 | $1,347.72 | -0- |
| 2008 | 2,078.10 | 1,006.42 | $305 |
| 2009 | 393.30 | 131.10 | -0- |

and (2) whether the Appeals Office abused its discretion in determining to proceed with the collection by lien or levy of petitioner's 2007-09 tax liabilities.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Florida when he petitioned this Court.

## I. Background

Petitioner earned a bachelor of science degree from the College of Engineering and Mathematical Sciences at the University of Vermont in 1977. After he earned his degree petitioner built furniture and then worked for a home builder. After investing in a real estate venture that went bad petitioner apprenticed with a boat builder for three years and then worked in the naval

[*3] architecture industry designing powerboats. Since then he has maintained a sole proprietorship working as a powerboat designer.

Petitioner generally did not file estimated tax returns or make quarterly estimated tax payments. He always requested an extension of time to file his annual Federal income tax return because spring was a busy season for his business. Although his earnings from his naval architecture business were sufficient for him to live on, he did not earn a lot and typically paid what he estimated he owed for a given taxable year when he filed his extension request.

## II. Petitioner's Divorce

In approximately 2004 petitioner filed for divorce in Massachusetts, where he and his then wife resided. When he filed for divorce petitioner had a net worth of approximately $1.3 million. Of that amount, approximately $500,000 was attributable to an inheritance.

The Massachusetts court with jurisdiction over his divorce case eventually awarded petitioner's wife most of his net worth. Additionally, the court awarded alimony of $1,000 per week to the wife. Petitioner's alimony obligation was ultimately reduced to $400 per week; as of the time of trial he was in arrears.

In August 2006 at about the time that he was beginning to prepare his 2005 Form 1040, U.S. Individual Income Tax Return, which was then on extension,

[*4] petitioner traveled to Massachusetts to deal with a contempt complaint because he was in arrears on his alimony payments. The court ordered him jailed for 90 days.

Shortly after petitioner was incarcerated, his attorney retrieved petitioner's computer and business records from petitioner's hotel room. The attorney left the computer and business records in her car over the weekend, and they were stolen. The stolen records included petitioner's books and records for his naval architecture business from January 2004 to approximately August 15, 2006. Petitioner filed a police report regarding the theft.

Petitioner was released from jail in November 2006. Because of his imprisonment, petitioner lost all of his business; his clients went elsewhere. He used his savings to pay bills, and he had no financial resources left. He began replenishing his design jobs and continued working as best he could.

Petitioner is a beneficiary of a family trust. The family trust holds shares in two family corporations--a construction company and a real estate holding company. The family trust sometimes, but not always, makes an annual distribution. Petitioner has no control over the family trust and cannot compel those in control of the family trust to distribute any money to him.

[*5]   Petitioner used his trust distributions in 2007-09[2] to restore his personal effects.  For example, he purchased a TV, a 1997 Ford Expedition, and a boat.[3]  Petitioner also used what limited funds he had to support himself, his girlfriend, her grown children who could not find jobs and had no other place to live, and two of his girlfriend's grandchildren.

III.   Petitioner's 2005-09 Returns

During his incarceration petitioner forgot about filing his 2005 return, which he had neither completed nor filed before the theft of his records.  He first recalled that he had not filed the 2005 return when he began preparing his 2006 return in the late summer or fall of 2007.  Petitioner prepared his own returns using TurboTax.  When he tried to import information from his 2005 return onto his 2006 return, he could not do so.  He called TurboTax to ask whether he could file his 2006 return without first preparing his 2005 return.  A TurboTax representative advised him that he would first have to complete the 2005 return because his 2006 return would have various carryover items from his 2005 return.

---

[2]Petitioner's 2007-09 returns reported dividends received from the family trust of $998, $7,185, and $7,232, respectively.

[3]Petitioner credibly testified that he bought the boat with the intention of repairing it and selling it for a profit.

**[*6]** On a date that is not in the record petitioner called the Internal Revenue Service (IRS) about the problems he faced in filing his 2005 and 2006 returns. He spoke with an IRS employee who advised him to pay whatever he thought he owed and to reconstruct his missing information so that he could prepare and file the 2005 and 2006 returns. Petitioner attempted to do this, spending approximately 275 to 300 hours on the reconstruction effort between the fall of 2007 and the spring of 2010.

In April 2010 the IRS sent a letter to petitioner regarding his delinquent 2005 and 2006 returns. In the letter the IRS asserted that he owed a significant amount of Federal income tax for those years. From May 2010 through January 2011, petitioner spent approximately 460 hours finishing the reconstruction effort, meeting with the IRS representative, fending off levies, and preparing his 2005 and 2006 returns.

On October 2, 2010, petitioner filed his 2005 return. On November 10, 2010, he filed his 2006, 2007, and 2008 returns. He later filed an amended 2008 return to correct a mistake on his original return. On February 8, 2011, petitioner filed his 2009 return.

[*7] On his 2007-09 returns petitioner reported the following adjusted gross income, total tax, withholding, refundable credits, amounts paid with requests for extensions to file, and amounts owed:

| Year | Adjusted gross income | Total tax | Withholding | Refundable credits | Amount paid with extension | Amount owed |
|------|------|------|------|------|------|------|
| 2007 | $38,341 | $9,550 | $735 | -0- | $647 | $8,168 |
| 2008 | 46,883 | 10,920 | 735 | $600 | -0- | [1]9,890 |
| 2009 | 27,578 | 3,320 | 735 | 400 | -0- | 2,185 |

[1]Petitioner's 2008 return shows an estimated tax penalty of $305, which he included in his amount owed for 2008.

On attached Schedules C, Profit or Loss From Business, petitioner reported the following gross receipts and net profits from his naval architecture business:

| Year | Gross receipts | Net profit |
|------|------|------|
| 2007 | $61,177 | $39,670 |
| 2008 | 66,039 | 41,746 |
| 2009 | 34,258 | 14,797 |

IV. Petitioner's Section 6320/6330 Hearing

On January 20, 2011, respondent mailed to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to petitioner's tax liabilities for 2007 and 2008. Petitioner timely requested a section 6330 hearing. On April 28, 2011, respondent mailed to petitioner a Letter 3172,

[*8] Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, advising petitioner that a notice of Federal tax lien (NFTL) had been filed with respect to his tax liability for 2009. Petitioner timely requested a section 6320 hearing.

On July 25, 2011, Settlement Officer Joe Breazeale (Settlement Officer Breazeale) sent a letter to petitioner. In the letter Settlement Officer Breazeale asked petitioner to submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, together with supporting documentation.

Petitioner requested a face-to-face hearing. On October 6, 2011, petitioner faxed to Settlement Officer Breazeale a copy of his Form 433-A. However, petitioner did not provide any of the supporting financial documents that Settlement Officer Breazeale had requested.

Settlement Officer Breazeale conducted a face-to-face hearing with petitioner on October 12, 2011. Petitioner stated that he thought the IRS should abate both interest and penalties. Settlement Officer Breazeale informed petitioner that, unless the IRS had made a mistake or caused a lengthy delay, the IRS could not abate interest. He asked petitioner to submit a written penalty abatement request by October 17, 2011, addressing each year separately and stating what

**[*9]** circumstances prevented him from filing and paying on time. Settlement Officer Breazeale also asked petitioner to submit an offer-in-compromise (OIC) by October 28, 2011. Settlement Officer Breazeale informed petitioner that he would have to file his 2010 return with the OIC and that he would have to provide various financial documents along with the OIC.

On October 17, 2011, petitioner sent by fax to Settlement Officer Breazeale a letter requesting an extension until October 20, 2011, to submit his request for penalty abatement letter. On October 24, 2011, petitioner sent to Settlement Officer Breazeale by fax (1) a cover letter and (2) his written penalty abatement request. In the cover letter petitioner mentioned problems he had encountered in filing his 2010 return as well as some concerns that he had with respect to requesting an OIC. He also stated as follows:

> Along those lines, I know our agreement was that I would have the OIC related materials gathered for you by around the end of the month. I wonder though if we might amend that a bit to allow you to process the abatement request first, before I start assembling the OIC materials. Putting everything together should take no more than two weeks and, not having a lot of it to spare these days, I would prefer not to waste the time on it if it turns out the abatement is satisfactory.
>
> If this is okay, I guess you don't really need to do anything. I'll just wait to hear about the abatement. If not, let me know so I can pick up with assembling the OIC materials.

Settlement Officer Breazeale noted petitioner's request in the case activity record.

[*10] On May 7, 2012, the Appeals Office issued to petitioner a notice of determination, sustaining the proposed lien and levy. In the notice of determination the Appeals Office determined that (1) petitioner was not eligible for penalty abatement because he did not meet the reasonable cause requirements, and (2) petitioner was not eligible for an OIC because he had failed to properly request an OIC and had not yet filed his 2010 and 2011 returns. The Appeals Office did not address petitioner's interest abatement request in the notice of determination.

## OPINION

### I.     Section 6320/6330 Hearing

Section 6321 imposes a lien on all property and property rights of a taxpayer liable for taxes where a demand for the payment of the taxes has been made and the taxpayer fails to pay. The IRS is authorized to file an NFTL with respect to taxpayers who have outstanding tax liabilities and fail to pay after notice and demand. Sec. 6323. Section 6320(a) requires the Secretary[4] to send written notice to the taxpayer of the filing of an NFTL and of the taxpayer's right to an administrative hearing on the matter. The conduct and scope of section 6320

---

[4]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

**[*11]** hearings are governed by section 6330(c), (d) (other than paragraph (2)(B)), (e), and (g). Sec. 6320(c).

The Secretary is authorized to collect tax by levy upon the taxpayer's property if any taxpayer liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment. Sec. 6331(a). Section 6330(a) requires the Secretary to send written notice to the taxpayer of the taxpayer's right to request a section 6330 hearing before a levy is made. If the taxpayer makes a timely request for a hearing, a hearing is held by the IRS Office of Appeals. Sec. 6330(b).

At a section 6320 or 6330 hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives, such as an OIC or an installment agreement. Sec. 6330(c)(2)(A). Additionally, the taxpayer may contest the validity of the underlying tax liability, but only if the taxpayer did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must issue a notice of determination regarding the appropriateness of the proposed collection action. The Appeals Office is required to take into consideration: (1) verification

**[*12]** presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action.  Sec. 6330(c)(3); Wadleigh v. Commissioner, 134 T.C. 280, 287-288 (2010).

Pursuant to sections 6320(c) and 6330(d)(1), we have jurisdiction to review the Appeals Office's determination.  See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the validity of the underlying tax liability is not properly at issue, we review the Appeals Office's determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.  In reviewing for abuse of discretion, we must uphold the Appeals Office's determination unless it is arbitrary, capricious, or without sound basis in fact or law.  See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).  However, we can uphold the Appeals Office's determination

**[*13]** only on grounds actually relied upon by the Appeals officer in the notice of determination. See SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943); Antioco v. Commissioner, T.C. Memo. 2013-35, at *24-*25; Jones v. Commissioner, T.C. Memo. 2012-274, at *22-*23.

Respondent concedes that petitioner was entitled to contest the validity of the underlying liability for the additions to tax because he had not received a notice of deficiency. Accordingly, we have jurisdiction to review the Appeals Office's determination with respect to the underlying liability for the additions to tax, and we review that determination de novo. We also review for abuse of discretion respondent's determination to proceed with the collection by lien or levy of petitioner's 2007-09 tax liabilities.

## II. Underlying Liability for the Additions to Tax

The Commissioner bears the burden of production with respect to the taxpayer's liability for additions to tax and must produce sufficient evidence indicating that it is appropriate to impose the additions to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer

**[*14]** had reasonable cause or substantial authority for the position. See Higbee v.
Commissioner, 116 T.C. at 447.

A.     Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure
to timely file a return, unless it is shown that such failure is due to reasonable
cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241,
245 (1985); United States v. Nordbrock, 38 F.3d 440, 444 (9th Cir. 1994). A
failure to timely file a Federal income tax return is due to reasonable cause if the
taxpayer exercised ordinary business care and prudence but nevertheless was
unable to file the return within the prescribed time. See sec. 301.6651-1(c)(1),
Proced. & Admin. Regs. Circumstances that are considered to constitute
reasonable cause for failure to timely file a return are typically those outside of the
taxpayer's control, including, for example: (1) unavoidable postal delays; (2) the
timely filing of a return with the wrong office; (3) the death or serious illness of
the taxpayer or a member of the taxpayer's immediate family; (4) a taxpayer's
unavoidable absence from the United States; (5) destruction by casualty of a
taxpayer's records or place of business; and (6) reliance on the erroneous advice of
an IRS officer or employee. McMahan v. Commissioner, 114 F.3d 366, 369 (2d
Cir. 1997), aff'g T.C. Memo. 1995-547. However, the unavailability of

[*15] information or records does not necessarily establish reasonable cause, see Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982); Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1343 (1971), aff'd without published opinion, 496 F.2d 876 (5th Cir. 1974); Cayabyab v. Commissioner, T.C. Memo. 2012-89, 103 T.C.M. (CCH) 1479, 1480 (2012), and mere forgetfulness does not constitute reasonable cause, see Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. 840, 859 (1957).

The parties agree that petitioner failed to timely file his Federal income tax returns for 2007-09. Accordingly, respondent has met his burden of producing evidence showing that the additions to tax under section 6651(a)(1) for 2007-09 are appropriate.

Petitioner contends that he exercised ordinary business care and prudence but was unable to timely file his 2007-09 returns because of the problems he faced in filing his 2005 and 2006 returns. Petitioner was incarcerated during the time that he would have otherwise filed his 2005 return, and he forgot about filing the 2005 return until he began preparing his 2006 return. Because his business and tax records for 2005 and part of 2006 were stolen from his attorney's car and his tax software did not allow him to properly complete his 2006 return until he completed his 2005 return, petitioner contends he was unable to timely file his

[*16] 2005 and 2006 returns. Petitioner asked an IRS employee for guidance with respect to the filing of his 2005 and 2006 returns, but he did not document the advice that the IRS employee provided.

The issue of whether the facts recited above establish reasonable cause for purposes of the section 6651(a)(1) additions to tax for 2005 and 2006 is not before us. The only additions to tax that are at issue are those for 2007-09.

Petitioner has not proven that he made a diligent and reasonable effort to timely file his 2007-09 returns. Petitioner's 2007-09 records were not stolen and were presumably available to him. He could have used those records to prepare and timely file his 2007-09 returns. Even if the information available to petitioner was not complete, he should have timely filed the 2007-09 returns and later filed amended returns to correct any mistakes caused by any missing information. See Estate of Vriniotis v. Commissioner, 79 T.C. at 311; Elec. & Neon, Inc. v. Commissioner, 56 T.C. at 1342-1343; Cayabyab v. Commissioner, 103 T.C.M. (CCH) at 1480. We therefore conclude that petitioner has not shown that he exercised ordinary business care and prudence with respect to his failure to timely file his 2007-09 returns. Accordingly, petitioner is liable for the additions to tax under section 6651(a)(1) for 2007-09.

**[*17]** B.  Addition to Tax Under Section 6651(a)(2)

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount of tax shown on a taxpayer's Federal income tax return on or before the payment due date, unless such failure is due to reasonable cause and not due to willful neglect.[5]  The section 6651(a)(2) addition to tax applies only when an amount of tax is shown on a return filed by the taxpayer or prepared by the Secretary.  Sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170 (2003).  A failure to timely pay the amount shown on a Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence in providing for the timely payment of his tax liability but nevertheless was either unable to pay the tax or would suffer an undue hardship if he paid on the due date.  See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

The parties agree that petitioner failed to pay the amounts of tax shown on his 2007-09 returns on or before the payment due date.  Accordingly, respondent has met his burden of producing evidence showing that the additions to tax under section 6651(a)(2) for 2007-09 are appropriate.

---

[5]The amount of the addition to tax under sec. 6651(a)(2) reduces the amount of the addition to tax under sec. 6651(a)(1) for any month for which an addition to tax applies under both paragraphs.  Sec. 6651(c)(1).

[*18] Petitioner contends that he exercised ordinary business care and prudence but was unable to timely pay the tax shown on his 2007-09 returns because he was unable to timely file those returns.[6] However, as we explained above, see supra pp. 15-16, petitioner has failed to prove that he had reasonable cause for failing to timely file his 2007-09 returns. Moreover, petitioner's purported inability to timely file his 2007-09 returns should not have prevented him from reasonably estimating the amount of tax that he would owe on those returns. We therefore conclude that petitioner has not shown that he exercised ordinary business care and prudence with respect to his failure to pay the amounts of tax shown on his 2007-09 returns on or before the payment due dates.

C.    Addition to Tax Under Section 6654

Section 6654 imposes an addition to tax on an individual who underpays his estimated tax. The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c). Each required installment of estimated tax is equal to 25% of the "required annual

---

[6]Petitioner does not contend that his failure to timely pay the tax shown on his 2007-09 returns was due to his financial circumstances on the payment due dates. His contention is that his failure to timely pay the tax shown on his 2007-09 returns was due to his lack of knowledge of the amounts of tax due. Accordingly, we do not consider whether petitioner has established that his financial circumstances on the relevant due dates were such that he could not pay the tax shown on his 2007-09 returns even if he had known the amounts due.

[*19] payment". Sec. 6654(d). The "required annual payment" is equal to the lesser of (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of his tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return. Sec. 6654(d)(1)(B) and (C). A taxpayer has an obligation to pay estimated tax only if he has a "required annual payment". Wheeler v. Commissioner, 127 T.C. 200, 211-212 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); see also Mendes v. Commissioner, 121 T.C. 308, 324 (2003).

The parties agree that petitioner was required and failed to make estimated tax payments for 2008. Accordingly, respondent has met his burden of producing evidence showing that the addition to tax under section 6654 is appropriate. Because there is no reasonable cause exception to the section 6654 addition to tax, petitioner is liable for the addition to tax under section 6654 for 2008.

III. Whether the Appeals Office Abused Its Discretion

Petitioner contends that the Appeals Office abused its discretion in sustaining the proposed collection actions because Settlement Officer Breazeale (1) did not allow him to submit an OIC during the section 6320/6330 hearing and (2) failed to address his interest abatement request in the notice of determination.

**[*20]** The administrative record shows that, on October 24, 2011, petitioner asked Settlement Officer Breazeale to first process his penalty abatement request before he submitted his OIC. Petitioner further asked Settlement Officer Breazeale to let him know whether this was unacceptable. Settlement Officer Breazeale noted this request in the case activity record. The administrative record, however, does not show that Settlement Officer Breazeale ever responded to petitioner's request.

By failing to respond to petitioner's request Settlement Officer Breazeale effectively caused petitioner to be under the mistaken impression that he would have an opportunity to submit his OIC--and to become current on his tax reporting obligations--if his penalty abatement request was denied.[7] We conclude that Settlement Officer Breazeale erred in failing to respond to petitioner's request and that therefore Settlement Officer Breazeale effectively denied petitioner an opportunity to submit an OIC during the section 6320/6330 hearing. Under these circumstances, remand is appropriate. See sec. 6330(c)(2)(A); Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Churchill v. Commissioner, T.C. Memo. 2011-182, 102 T.C.M. (CCH) 116, 118 (2011).

---

[7]There is no indication that petitioner's request was submitted for an improper purpose.

**[*21]** The administrative record further shows that petitioner requested interest abatement pursuant to section 6404(e) during the section 6320/6330 hearing.  The Appeals Office failed to address this issue in the notice of determination.  Upon remand, the Appeals Office shall address this issue in a supplemental notice of determination.  See Chenery, 318 U.S. at 93-95; Antioco v. Commissioner, at *24-*25; Jones v. Commissioner, at *22-*23.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate order will be issued.